MARGARET E. WARD et al.

v.

JAMES A. WARD.

*Filed at Springfield March 29, 1887.*

1. AFTER-BORN CHILD—*in case of a prior will—of raising a portion for such child.* The statute provides: "If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not, on that account, be revoked; but, unless it shall appear by such will, that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given, shall be abated, in equal proportions, to raise a portion for such child, equal to that which such child would have been entitled to receive out of the estate of such testator, if he had died intestate."

2. A testator, on May 12, 1880, made his will, making various devises and legacies to his widow and eight children, and to some other relatives, disposing of his entire estate. On July 15, 1880, another son was born to him, not mentioned in the will, and the testator died on July 6, 1881, and his will was duly probated: *Held*, that such son, born after the making of the will, was entitled to an undivided one-ninth part of the realty described in each devise, subject to the widow's dower therein, and of the rents collected therefrom after the testator's death, and that each devise of realty should be abated or reduced by an undivided ninth part thereof, and be effective as to the remaining eight-ninths,—in other words, one undivided ninth should be deducted from each devise of real estate, and the other eight-ninths should pass as directed by the will.

3. Where the testator, after making specific devises of certain parts of his real estate, authorized his executor, who was also made a trustee, to sell the "residue and remainder" thereof at a certain time, and to divide the proceeds equally among his eight children, it was *held*, that the after-born child should have one-ninth of such "residue and remainder," as well as of such parcels as had been specifically devised, subject to the widow's dower therein, and the other eight-ninths thereof should remain subject to sale and distribution, according to the terms of the will, and that it was error to take the whole of the "residue and remainder" from the other eight children and give it all to the after-born child, as that would be a virtual revocation of that part of the will.

4. Where a child of a testator is born after the making of the will, which is not provided for in the will, and is not disinherited, and all the personal property of the testator is bequeathed to the widow, such child will be entitled to its share in such personalty, the same as if its father had died intestate; and this share is properly charged against the widow.

5. SAME—*after-born child and the widow's dower.* The portion raised for such after-born child from the various devises will be subject to the widow's dower, notwithstanding she may not have renounced the benefit of the provisions of the will. That part of the estate taken by such child is to be treated the same as intestate property; and as the provision made for the widow is subject to contribute its proportionate part in making up the portion of such child, she should have dower in such portion.

6. But where a testator has an heir born after the making of his will, not provided for and not disinherited by the will, who is entitled to receive a child's portion of the estate, the failure of his widow to renounce the will, will prevent her from asserting dower in the lands, as against the devisees, to the extent they each take under the will, though she will be entitled to dower in that part of the estate which the statute, independently of the will, gives to the after-born child.

7. COSTS—*on bill by child born after the making of a will.* Where a child was born to a testator after the making of his will, which was entitled to share in the estate under the statute, on bill filed by such child to have its share fixed and allotted, the costs were apportioned among the parties according to their several interests in the estate.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

James Ward died, testate, on July 6, 1881, leaving a widow, Margaret E. Ward, and nine children: Sarah A. Amberg and Mary E. Gannon, adults; and Frank C. Ward, Albert J. Ward, Charles S. Ward, Walter M. Ward, Anna R. Ward, Ella D. Ward, and James A. Ward, minors. The will was executed May 12, 1880. James A. Ward, the complainant, who brings this bill by his next friend, was born July 15, 1880, and is not mentioned in the will.

In his will, James Ward, after directing the payment by the executor of debts and funeral expenses, makes the following devises and bequests:

*First*—He bequeaths to the widow all the personal property, (except the library, which is given to the four sons, Frank, Walter, Charles and Albert) on condition that she pay out of the same all lawful claims against the estate, and also $500 to his sister, Sarah Hitchcock, and $500 to his brother, Edward Ward, in annual installments of $100 each:

*Second*—He devises to the widow the use, improvements and income of certain lots in Chicago for her life, and, at her death, such lots to go to the four sons, above named, share and share alike, in fee; but if she should die before any of said four sons become twenty-two years old, then the trustee, William A. Amberg, is to sell said lots, and divide the proceeds, *pro rata*, among said four sons, giving to each his share upon his becoming twenty-two years of age:

*Third*—He bequeaths to his wife the income, issues and profits in the premises, known as No. 435 West Van Buren street in Chicago, his interests and rights therein being set forth in an agreement between his sister, Sarah Hitchcock and himself:

*Fourth*—He devises certain lots in Chicago to his daughter, Sarah A. Amberg:

*Fifth*—He devises certain lots in Chicago to his daughter, Mary E. Gannon:

*Sixth*—He devises certain lots in Chicago to William Amberg, in trust for his son, Frank, until he arrives at the age of twenty-two years, and, after that, to said son, in fee:

*Seventh*—He devises certain lots in Chicago to said Amberg, in trust for his son, Walter, until he becomes twenty-two years old, and, after that, to said son, in fee:

*Eighth*—He devises certain lots in Chicago to said Amberg, in trust for his son, Charles, until he becomes twenty-two years old, and, after that, to said son, in fee:

*Ninth*—He devises certain Chicago lots to said Amberg, in trust for his son, Albert, until he becomes twenty-two years old, and, then, to said son, in fee:

*Tenth*—He devises certain Chicago lots to said Amberg, in trust for his daughter, Anna, until she becomes twenty-two years old, and, then, to her, in fee:

*Eleventh*—He devises certain Chicago lots to said Amberg, in trust for his daughter, Ella, until she becomes twenty-two years old, and, after that, to her, in fee:

8—120 ILL.

*Twelfth*—He devises to his sons, Frank and Albert, in fee, each an undivided half of six hundred and forty acres of land in Texas:

*Thirteenth*—He devises to his sons, Charles and Walter, in fee, each an undivided half of another tract of six hundred and forty acres of land in Texas:

*Fourteenth*—He authorizes said trustee and executor to sell the residue and remainder of his real estate (the same being in Cook county,) at any time before his son, Frank, becomes twenty-two years old, at public or private sale, for such price and upon such terms as may seem best to him, and to convey the same free from any liabilities, and to divide the same among all the said children, named in the will, share and share alike:

*Fifteenth*—He appoints Amberg, the trustee and executor, guardian of the estates of the minor children, named in the will, and authorizes him to manage and improve the same, and collect and pay over the incomes thereof, etc.

*Sixteenth*—In case of the death of any of his children, without leaving lawful issue, he gives and devises the share of such child dying, to Amberg, trustee and executor, in trust, to sell the same for the benefit of the survivors in equal shares and proportions, in the same manner, as specified as to the residue of the real estate.

In the circuit court, several references were made to the master, who took testimony, including that of real estate experts and others, and, in his several reports, found, that the portion, which appellee would have been entitled to receive out of his father's estate, if there had been no will, was one-ninth of the estate, subject to the dower of the widow therein; that appellee was entitled to one-ninth of the rents, since the testator's death; that the total value of the land and the improvements thereon, belonging to the estate, was $308,707.75; that the gross value of the personal estate was $23,737.27, and, after deducting therefrom, the costs and

expenses of administration, the widow's award and the proven debts, that the net value of the personal estate was $9209.91; that the total value of the estate was $317,917.66; that the dower of the widow in the real estate, calculated by the Northampton tables, was $62,420.70, which deducted from $308,707.75, would leave a balance of $246,287.05, one-ninth of which, to-wit: $27,365.23, would be the value of appellee's interest in the realty; that his interest in the personalty was $682.21, being one-ninth of the two-thirds of the net amount thereof, which would belong to the heirs in case of intestacy, after giving the widow one-third thereof; that the total value of appellee's inheritance was $28,047.44.

The decree, entered by the circuit court, confirms the reports of the master, and finds, that, to make up the sum of $28,047.44, the several defendants (the devisees above named) should contribute proportionately to the amounts devised and bequeathed to them, specifying the amount to be contributed by each; that the real estate, described in the will as "residue and remainder" (that referred to in above paragraph No. 14) be set off to complainant, without prejudice to the defendants, at the value of $18,725, and that the residue of the sum of $28,047.44 be paid by the trustee out of moneys in his hands, belonging to the defendants; that the real estate, specifically devised is not susceptible of partition without prejudice; it is decreed, that the trustee convey such "residue and remainder" to complainant, that the defendants pay to William Amberg, guardian of complainant, the respective sums above named (specifying them;) that said real estate and money shall be the full portion of complainant in the estate, and the balance of the property shall be free from any claim on his part; that certain defendants pay to complainant one-ninth of the net amounts of rents, received by them, etc; that the taxed costs be borne by complainant and the several defendants in proportion to the value of their several devises.

116 WARD *et al. v.* WARD.

Mr. JAMES GOGGIN, for the appellants:

The pretermitted heir should be made a sharer in each separate devise, and it was error to raise its portion out of the residuary devise. *Armstead* v. *Dangerfield,* 3 Munf. 20; *Haskins* v. *Spiller,* 1 Dana, 170; *Shelby* v. *Shelby,* 6 id. 60; 1 B. Mon. 266.

Mr. DANIEL J. AVERY, for the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Section 10 of chapter 39 of the Revised Statutes of this State, entitled "Descent" (Starr & C. Stat. page 883) is as follows:

"If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not, on that account, be revoked; but, unless it shall appear by such will, that it was the intention of the testator to disinherit such child, the devises and legacies, by such will granted and given, shall be abated, in equal proportions, to raise a portion for such child, equal to that which such child would have been entitled to receive out of the estate of such testator, if he had died intestate," etc.

No provision is made in the will of James Ward for his son, the appellee, who was born, after the making of the will, and before the death of his father; nor does it appear by the will, that it was the intention of the testator to disinherit appellee.

Inasmuch as the testator left a widow and nine children, including appellee, the portion, which appellee would have been entitled to receive out of his father's estate, if the latter had died intestate, is an undivided one-ninth of all the real estate, subject to the widow's dower therein, and two twenty-sevenths $(\frac{2}{27})$ of the net personalty, that is to say, one-ninth of two-thirds of the net personalty.

The testator makes separate devises of specific pieces of real estate. Appellee is entitled to an undivided one-ninth part of the realty, described in each devise, and of the rents collected therefrom, since the testator's death. Each devise of realty should be abated or reduced by an undivided one-ninth part thereof, and be effective as to the remaining eight-ninths. In other words, one undivided one-ninth should be taken out of or deducted from each devise of real estate, and the other eight-ninths should remain under the operation of the will. For instance, the testator devises certain lots to his daughter, Mrs. Amberg. She will continue to own, as directed by the will, eight-ninths of those lots, but the title to the other one-ninth will become vested in appellee, subject to the widow's dower. It may continue to be undivided, or a partition may be made between Mrs. Amberg and appellee, as may be thought best. As to the land, embraced in this devise, no other persons, except Mrs. Amberg and appellee and the widow, are interested. The statement, here made as to the Amberg devise, is true as to every other devise in the will.

The will is not to be revoked, but "the devises and legacies * * * shall be abated in equal proportions." This can mean nothing else than that the proportion, in which one devise or legacy is abated or. reduced, shall be equal to the proportion, in which each of the other devises or legacies is abated or reduced. If, in the present case, each devise is so reduced as to give appellee one undivided one-ninth thereof subject to dower, then all the devises are reduced in equal proportions. They would be abated in unequal proportions, if, for example, the first devise should be reduced by one undivided one-eighteenth, and the second by one undivided one-eighteenth, and the third by an undivided two-ninths. The proportion, in which the devises and legacies should be abated, is the proportion, in which the after-born child would be entitled to share in the estate, if it was intestate.

It is true, that the statute speaks of the portion to be raised, as "*equal to* that which such child would have been entitled to receive out of" the intestate estate, and does not designate it, as being *the same as* that, which he would have been so entitled to receive. But we understand the meaning here to be, that the several proportions, in which the several devises or legacies are abated, shall together equal the proportion of the estate, which the after-born child would have been entitled to, in case of intestacy. If appellee, for instance, is given one-ninth of the real estate in each devise, the portions, so awarded him out of the several devises, will only be equal to that one-ninth of the whole estate, which he would have inherited under the law, if his father had died intestate.

After making specific devises of certain parts of his real estate, the testator, in the fourteenth clause of his will, authorizes the trustee to sell the "residue and remainder" thereof at a certain time, and to divide the proceeds equally among his eight children. Under the construction here contended for, appellee should have one-ninth of such "residue and remainder," and the other eight-ninths should remain subject to sale and division, according to the terms of the will. The decree of the circuit court, however, takes the whole of the "residue and remainder" from the eight children, and gives it all to appellee. The devise in the fourteenth clause is thus abated entirely, instead of being abated, as the statute requires, in a proportion equal to that, in which every other devise is abated. Moreover, by taking the eight-ninths of the "residue and remainder" out of the operation of the will altogether, the decree virtually revokes that portion of the will, which disposes of such "residue and remainder," and thereby violates the statute, which says, that "the will shall not, on that account, be revoked."

The questions here involved are presented to the consideration of this court for the first time by this case. We have been referred by counsel to few authorities and have not the

time to examine the statutes of the different States, and compare them with our own, to see how far adjudications, based upon special statutes, may be applicable in the construction of the one, now under consideration. But we think the views, here expressed, are sustained by the following cases: *Armstead* v. *Dangerfield*, 3 Munf. 20; *Haskins* v. *Spiller*, 1 Dana, 170; *Shelby* v. *Shelby*, 6 id. 60; *Shelby* v. *Shelby*, 1 B. Mon. 266.

The statute, brought under review in these cases, was similar, in its phraseology, to our own. It provided that the after-born child should "succeed to the same portion of his father's estate, as such child would have been entitled to, if the father had died intestate; towards raising which portion, the devisees and legatees shall contribute proportionately out of the parts, devised and bequeathed to them."

In *Haskins* v. *Spiller, supra,* William Spiller made a will, providing for his four children, and, afterwards and before his death, a fifth child, George Spiller, was born. George filed a bill to reach his interest in a tract, which had been devised to his brother, B. C. Spiller, and had been sold by the latter to various parties. It was held, that he was entitled to one-fifth of the whole estate; that he could sue and recover from each devisee a fifth of that, which was devised to him; that one-fifth of the tract in one entire body could be allotted to the complainant, leaving the defendant or defendants, from whom such fifth was taken, to seek indemnity, by *pro rata* contribution, from the other defendants, or, if the the chancellor should so determine, complainant could take "a fifth from each defendant of that, which he holds."

In *Shelby* v. *Shelby, supra,* it is held, that, where the after-born child is entitled to one-fourth of the whole estate, each devisee must contribute one-fourth of the property devised to him. In that case, the court say, that, as the widow would have been entitled to one-third of the land during her life, the after-born child should only have one-fourth of two-thirds

thereof, while she lived, and one-fourth of the remaining third, after her death.

In the case at bar, however, as appellee would only be entitled, in case of his father's intestacy, to one-ninth of the realty, subject to the widow's dower therein, we see no objection to making the proportion, assigned to him out of each devise, subject to such dower. The fact, that the widow did not renounce the benefit of the provisions in the will, only bars her dower, as to those interests, upon which such provisions take effect. Appellee's interest is relieved from the operation of the will, and, as to that interest, the estate is virtually intestate. Her failure to renounce prevents her from asserting dower in the eight-ninths of each devise, which are covered by the terms of the will, but does not deprive her of dower in the one-ninth, which the law disposes of, independently of the will. Moreover, it is no more than just, that she should have dower in appellee's one-ninth, because her failure to renounce was based upon the expectation of getting all that the will gave her, and yet the devises and bequests to her are abated in the same proportion, in which the other devises and legacies are abated.

A part of the prayer of the bill in this case is, "that a fair and equal partition and division of each and every part of said estate, real and personal, may be made, so as to give orator the portion, to which he is entitled," but no steps were taken in the circuit court to effect the partition and division here prayed for. We think that commissioners should be appointed, as in a partition proceeding, and that one-ninth of the realty, embraced in each devise, should be set off to appellee and the other eight-ninths to the party or parties entitled thereto under the will. In case the commissioners should report, that the property in any one devise is not susceptible of division, the same can be sold and the proceeds divided between appellee and the devisee or devisees therein mentioned in the proportion of one-ninth and eight-ninths,

the interest of appellee in the land or the fund being subject to the widow's dower.

We see no objection to that portion of the decree, which finds the interest of appellee in the personal property to be $682.21, but this amount should be charged against the widow, as she took all the personalty by the terms of the will.

The costs should be apportioned among the parties according to their several interests, as here indicated.

The decree of the circuit court is reversed, and the cause is remanded with instructions to proceed in conformity with the views of this opinion.

*Decree reversed.*