## METHOD OF WORKING OUT RIGHTS OF A CHILD BORN AFTER EXECUTION OF A WILL.

[Circuit Court of Lucas County.]

FREDERICK A. J. WEILAND, AN INFANT, BY HIS GUARDIAN, v. ANNA S. MUNTZ ET AL.

Decided, October 3, 1903.

*Partition—Of Property Specifically Devised—Where Plaintiff Was Born after Execution of the Will—And Property was Acquired after Execution of the Will—And there is a Homestead Subject to Widow's Life Estate—Guardian Disqualified from Serving.*

1. A qualified guardian may be substituted for a disqualified guardian as a party to a suit.
2. W died testate, leaving fourteen children. The youngest child was born after the execution of the will, and property was acquired after the execution of the will. The property owned by W at the time the will was executed was specifically devised, with the exception of the homestead in which the widow was given a life estate. *Held:* That the one-fourteenth interest in the estate which this child, otherwise unprovided for, takes by virtue of Section 5961, must be worked out of the entire estate, and not out of the after acquired property or the homestead burdened with the life estate; and the right exists, therefore, on the part of the guardian of this child to maintain a suit for the partition of property specifically devised.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This is an action for the partition of real estate. It comes into this court by way of appeal. It is submitted to us upon the pleadings and an agreed statement of facts. There have been various parcels of land partitioned with respect to which no question has been made. It is now sought to partition a certain city lot and a part of another lot, of which the defendant, Gooderman, claims to be the owner in entirety. It is claimed by this defendant that the plaintiff had no title in this real estate; that he, plaintiff, is not a tenant in common with defendant and that plaintiff, therefore, has no right to have partition.

It appears that John Weiland was the owner of this and of other real estate in his lifetime; that he died in the year 1889,

in Wood county, Ohio, testate as to part of his estate and intestate as to part; that his will was executed in 1880; that a certain tract of land with respect to which he died intestate—a tract of about thirty-nine acres—was situated in Wood county, Ohio, and was acquired by him after he had made his will. It also appears that the plaintiff, who is one of his children—there being in all fourteen children—was born in the year 1886, some six years after this will was executed and some three years before the death of decedent

It is contended on behalf of the plaintiff that no provision was made for this child in the will, and that therefore, by force of Section 5961, Revised Statutes, the will was revoked, *pro tanto,* or was invalid as to this child, and that this child comes in for a full portion of the estate, that it takes by inheritance precisely as if no will had ever been made devising any of these lands, and that therefore it takes its share as a vested estate in each parcel of land of which the decedent died seized.

On the other hand it is contended that this is not so; that in the first place there is provision made for this child, so that it takes nothing by force of Section 5961; also that if provision were not made so that it takes an interest under that section; that what devolves upon it is a right to recover an aliquot part of the estate of the decedent—not in kind, not in specie, whether in land or in chattels—but as if it were in the nature of a debt of the estate to such heir, or a claim in his favor as a creditor enforceable against the estate and against the heirs as well.

By his will the decedent devised one tract of land in Wood county, Ohio, to eight of his children, naming them, and devised this lot and part of a lot in controversy to five other of his children, naming them. This still left undisposed of a fifty-acre tract of land in Wood county, constituting the homestead, with respect to which his will contains a provision that his wife —who afterwards became his widow—should have an estate for life therein, and that the remainder should go to his children generally, without naming them. It is needless to repeat that the name of the after-born child did not appear in the will. The undevised thirty-nine acre tract was acquired by the testator after the execution of his will.

It is contended on behalf of defendant, Gooderman, that the plaintiff should be relegated in the enforcement of his rights to the undevised land in Wood county and to this fifty-acre tract of land; that he should not be permitted to recover anything out of either of the tracts specifically devised to the children named.

There was a preliminary question in the case which I have passed by, and which I will notice here. Suzanna Weiland is named in the will as executrix and she has qualified as executrix. By the will she is made guardian of all the minor children, and by virtue and in pursuance of that provision of the will she was appointed guardian of this plaintiff as well as of the other minor children of the decedent. Her right to prosecute this action as such guardian was questioned by a demurrer filed in this case. It seems to have appeared to the court below that she was disqualified from acting as such guardian, and it seems to us very clear that, under the circumstances, she was disqualified. It also appears by the decision in the case of *Scobey* v. *Gano*, 35 O. S., 550, which was a proceeding to appoint as guardian a person duly qualified, that the former action of the court in appointing a disqualified person might have been attacked collaterally—that is to say, it might be ignored—and it is urged here that the action of the court of probate in appointing this guardian may be and should be ignored, and that therefore the case was not properly in court. The court below, however, on motion of the plaintiff, permitted another person to be appointed subsequently as the guardian of the estate, to be substituted for the person disqualified to act as such guardian. This was done over the objection of this defendant; but subsequently the defendant answered and the case went to trial and was decided in the court below upon the merits, and from the judgment of that court an appeal is taken here.

Aside from the question as to whether or not the defendant waived this objection by answering instead of allowing judgment to be entered and prosecuting error, we are of the opinion that the action of the court in allowing this substitution was strictly legal and regular; that the substituted guardian is duly in court; that the plaintiff is duly in court, and that the judg-

ment of the court herein will be binding upon the parties, so that they need not have any apprehension of such judgment as may be entered herein being ignored or treated as a nullity because of the action having been begun by Suzanna Weiland as guardian.  Upon that point we hold against the defendant.

Coming back to the consideration of the main question, as to whether plaintiff acquired any estate or interest so as to become a tenant in common in this property, I should state a few additional facts.

Part of the owners of the undevised thirty-nine acre tract in Wood county, soon after the will was probated, in 1890, conveyed their interest to a man by the name of Radcliff.  Afterwards Radcliff instituted an action in partition in Wood county making this plaintiff a party defendant.  The plaintiff, by guardian ad litem, appeared and answered, and claimed an undivided one-fourteenth.  The land was partitioned and a one-fourteenth interest was set off to and received by the guardian of the plaintiff.  Soon after the probating of this will the owners of the lot and part of a lot here in controversy conveyed the same by warranty deed to one Brown.  Brown subsequently conveyed the property by warranty deed to the defendant, Gooderman.

Among the claims of Gooderman is this: that his minor—this plaintiff—should have worked out for him his interest in the whole estate by the partitioning of the tract of land specifically devised to the eight heirs, or upon the partitioning of the thirty-nine acres of land not devised that it should be worked out of the fifty-acre homestead tract in which the widow has a life estate.  The tract specifically devised to the eight heirs is not partitioned in this proceeding.  The claim is that primarily it ought to have been worked out of the thirty-nine acres, and that it not having been worked out there, plaintiff is precluded from having it worked out of this land specifically devised; also that the plaintiff should seek satisfaction of his claim out of the fifty acres yet undisposed of.  It will be remembered, however, with respect to the fifty acres, that a life estate having been given therein to the wife, that during the existence of that life estate it can not be partitioned as against her wish, or without her consent, and partition can not now be had, so that if the

plaintiff should undertake to work his interest out of that land, his right to do so would probably be postponed until after the death of the widow. It might be effected by some form of decree, but it could not be occupied or enjoyed, or the plaintiff could not have an interest in possession until after the death of the widow.

The language of the statute upon this subject does not seem to us to be entirely clear or free from doubt as to the question made. It seems to us to afford very strong ground for the contention made by the defense. A preceding section (Section 5959) making provision for a posthumous child—one born after the death of the testator—provides that the birth of such a child shall have the effect of revoking the will, if it were the only child. Section 5961 says nothing about the will being revoked or rendered a nullity, either *pro tanto* or otherwise, and it provides for the cases of posthumous children where there are other children, and pretermitted children who are not posthumous, that is to say, such as are born after the making of a will and before the death of the ancestor, and the plaintiff comes within that class, that is not posthumous child, but stands upon the same ground here, there being other children. And this section of the statute reads:

''When a testator at the time of executing his will shall have a child absent and reported to be dead, or having a child at the time of executing the will, shall afterward have a child who is not provided for in the will, the absent child, or the child born after the execution of the will, shall take the same share of the estate, both real and personal, that he would have been entitled to if the testator had died intestate.''

In this case the share would be one-fourteenth, and therefore he must take one-fourteenth of the estate—but whether in specie, or whether, as if there had been no will made, he would inherit an interest in each tract of land, the statute does not say. It provides further—following right along with the reading that—

''toward raising which portion the devisees and legatees shall equally contribute in proportion to the value of what they shall receive under the will, unless in consequence of a specific devise

or bequest, or of some other provisions in the will, a different apportionment among the devisees and legatees shall be found necessary, in order to give effect to the intention of the testator, as to that part of the estate which shall pass by the will.''

That, I say, seems upon the reading to afford considerable ground for the contention of the defendant here that there is a portion to be raised by contribution of the devisees, respect being had to the will and the purpose of the testator, so that if a certain share should be exonerated from the burden that circumstance should be respected in apportioning the obligation, that the portion should be made up by contribution, not necessarily in specie as if it were a general claim—and that the after-born child will not inherit it in the sense or in the degree that he would if the ancestor had died intestate. And there are other clauses of the statute bearing upon this point and adding force to this contention, in Sections 5978 and 5979. And our attention is called to the fact that this statute is substantially, if not exactly, a transcript of the statute of Massachusetts upon the same subject, which has been in force in that state for a long time; and it is urged that therefore, upon a principle applicable to a case of this kind, it should receive the construction that the statute in Massachusetts has received at the hands of the courts of that state, and in that connection our attention is called to a case in 137 Mass., 527 (*Bowen* v. *Hoxie*), where it is held, in effect, that the claim is in the nature of a debt of the estate. In that case there were not devises of real estate, but were bequests of personalty, and in working out the share of a posthumous child the court required that the property which constituted the residuum of the estate, that not specifically bequeathed, should be first exhausted before a specific bequest should be touched. I will not stop to read from the case. It appears to proceed upon a very fair course of reasoning.

Before proceeding further with this discussion I should come back to a matter which I have passed; and that is the question made as to whether or not provision was made for this child in the will? Now we have cited to us against the contention of the defendant, the case of *Rhodes* v. *Weldy*, 46 O. S., p. 234.

I read from the opinion by Chief-Justice Owen.  The child not provided for in that case was named Elizabeth, and the judge says:

"If Elizabeth was provided for by the will of her father, it was not revoked by her birth after its execution, and the judgment below should be affirmed.  If there was such provision made, it is to be found in these words: 'I will and devise to my wife, Harriet Young, all my real estate wherever situate, to use and occupy as to her may seem proper, during her natural life, and after her death to the heirs of her body begotten.' "

Substantially the same as the first provision of the will under consideration; that is item 3 of that will.  He then continues (p. 236):

"It will not be contended that this is a specific provision for the plaintiff.  If it is a provision at all, it is so because the language is comprehensive enough to include her.  It was evidently written with a view only to the maternity of the 'heirs of her body begotten,' and without reference to their paternity. It was intended as a comprehensive direction of the course which the property should take after the immediate object of the testator's bounty should die, unless she should die without issue, in which case other direction is made in the will.  Much learning and research have been expended in discussing the character of the devise in remainder, and whether it is a vested or contingent interest.

"In the view we take of the case, this is wholly immaterial. The question is, has Elizabeth been provided for in the will in the sense of the statute.  It is not conclusive of this question to say that a 'disposition' has been made which may inure to her benefit.  'Disposition' and 'provision' are not necessarily convertible terms."

He then proceeds to hold that notwithstanding the fact that this general provision in favor of the children or heirs of the body of his wife would inure to the benefit of this after-born child, the same as for the benefit of the others, that could not under the statute be deemed a provision for that child.  That was a decision under Section 5959 of the statute and not under Section 5961; but according to our view the statutes in this respect are alike, and therefore, the authority is in point.

A later case, in the 66th O. S., 233 (*German Mutual Ins. Co.*

v. *Lushey et al*), is under Section 5961, and is in point as in-
dicating what the court regard as "provision" for an unborn
child.  There the will specifically provided: "Should any child
or children, we now having only one, George Gabriel, be born
to me hereafter, it shall in no wise alter or revoke this will and
testament."  Now the wife of the testator in that case was at
the time enciente with this after-born child, and he seems to
have had in mind the probability of its being born alive and
attempted to cut it off and made a provision in respect to it;
but the Supreme Court says that is not a provision for it, but
against it, and gave full force and effect to Section 5961 and so
gave to it an undivided one-half of the estate.

Now I will say something more upon this question as to the
right or interest that the plaintiff inherited—whether the right
of contribution is to be worked out in a court of equity as if
it were a claim, secured, perhaps, by an equitable lien, or whether
it was an estate cast upon him by inheritance the same as if
there had been no will.

I have already indicated the line of argument of the defendant
and the chief authority relied upon, to-wit, the Massachusetts
case, and will say that we were very strongly inclined at first
to follow that decision and that course of reasoning with respect
to our statute; but upon further consideration we have con-
cluded that the question is set at rest in the state of Ohio by
this decision to which I have just adverted in the 66th Ohio St.
Reports, and that the decision there requires us to resolve this
question against the contention of defendant.  To be sure, in that
case this precise point does not appear to have been debated or
in any way called to the attention of the court and perhaps was
not considered by it.  There was a single tract of land; the land
was devised by the husband; the child living at the time the will
was executed was cut off by the will and the court decided that
the child afterwards born was not cut off.  The question arose
between the after-born child and the mortgagee of the husband.
The husband had undertaken to mortgage the entirety.  The
after-born child, in the action between it and the mortgagee,
claimed an undivided one-half.  The court held that the child
was entitled to an undivided one-half.  It does not hold, how-

ever, that it had a right to compel contribution or had a right to compel the mortgagee of the entirety to make up to it the value of this undivided one-half—he retaining the title to the land, but it holds that by force of this statute the title to an undivided one-half of this land was cast upon this child. After discussing the case, the opinion closes with this sentence (p. 241):

"It follows, therefore, that George Lushey, the husband of the testatrix, when he gave the mortgage to plaintiff in error, owned but one-half of the premises described in the mortgage, and that the judgment of the court of common pleas was right, and that the circuit court did not err in affirming the judgment."

If the court had taken the view contended for by the defendants here, it would have been obliged to say that he owned the whole premises, subject to this charge, and would have been obliged to adjudge that the child could not recover in that form of action then pending before the court, but must. enforce payment of an amount equal to the value of the estate. The action was by the grantee in a mortgage to foreclose the mortgage upon the entirety; it was in an action where the child appeared and answered with respect to that state of facts that the court says that the plaintiff in error owned one-half of the premises described in the mortgage. The syllabus reads as follows:

"Where a testatrix, having a child living, devises all her estate to a third person (in this case her husband), without making provision in her will for an after-born child, such after-born child, if it survive the testatrix, by virtue of the provisions of Section 5961, Revised Statutes, will inherit from the mother as her heir at law, as if she had died intestate, notwithstanding that by clear and explicit language in the will such testatrix undertakes to disinherit such after-born child."

Now in entering judgment here, as we shall, in favor of the plaintiff and against the defendant, adjudging that the plaintiff is the owner of an undivided one-fourteenth interest in this land and is entitled to partition, we believe that we are following the law as laid down by our Supreme Court. There is much authority upon this question and in support of this conclusion, or, I may say, in harmony with this decision of the Supreme Court.

We cite 2d Woerner on the American Law of Administration, page 1240, being the latter part of Section 565, and cases there cited, which we have examined, and one especially, which I shall not take time to read from, but which seems to be very much in point—the case of *Ward* v. *Ward*, 120 Ills., 111.

There is a question presented in this case as to improvements, rents and profits, but we understand that there is no difference about the rights of the parties as to these and they will be worked out without the intervention of the court.   The case will be retained in this court and an order of partition will be issued out of this court.

*Beard & Beard,* for plaintiff.

*Brown & Geddes,* for defendants.